We'll now hear the first case for today, Harleysville Insurance v. Cerciello. I vaguely remember completing my clerkship. It seems very long ago. Say again. I vaguely remember completing my clerkship. It seems like many, many years ago. For whom did you clerk? Judge Kelly on the Superior Court of Pennsylvania. May it please the Court, my name is Mike Blazek and I represent Harleysville Insurance Company of New Jersey, who is the appellant on this matter. I respectfully request five minutes for rebuttal. It's granted. I'd like to start off my argument by jumping into what I think is probably the most important issue that drove the trial court's opinion where I think the error occurred. And that's specifically whether Pennsylvania law enforces and honors non-binding arbitration agreements. The district court found, and it was the crux of its opinion, that Pennsylvania common law arbitration procedures operate to invalidate non-binding arbitration agreements where the contracting parties chose to preserve their right to a judicial forum. And it's our position that this is simply incorrect. And by a little bit of background, I'd like to give you, because I think that's what drives this decision. In New Jersey, when this was a New Jersey contract. Is that incorrect as a matter of law? Is that incorrect as a matter of practicing the profession? I think it's as a matter of law. All right. Okay. So courts generally do not enforce binding arbitration? Let me just step, can I step back? I was just going to give you a little bit of that background. I think in New Jersey, it's been the practice for the past 25 years, since 1986 when Cohen was decided, Cohen v. Allstate, that parties to contracts can enter non-binding arbitration agreements. And that's been the practice, and there's a well-developed case over the course of the past 25 years in New Jersey. Let me just ask you a question. Sure. I think it is relevant here. If Harleysville sells that same policy in Pennsylvania, does the provision for underinsured and uninsured contain the non-binding arbitration, or is it binding? That's about where I was about to go. It wasn't until 2005 in Pennsylvania when a case called Cohen was decided by the Pennsylvania Supreme Court. Prior to Cohen, it was understood generally in practice that arbitrations had to be binding, and Cohen decided for the first time that, no, there's no authority and you don't have to have binding arbitrations for underinsured or uninsured motorist claims. So that's why we don't have a lot of developed case law in the state of Pennsylvania with regard to that type of agreement, because it's only been since 2005 when policies have started to change. So we're dealing with a host of issues that are arising out of that now. What does the evidence look like in these types of cases? How do you handle them? Who's on the caption? And those are the sorts of things that we're dealing with from a practice perspective. I think that the trial court erred in this matter because it completely overlooked and ignored a case called Bucks that came out of the Pennsylvania Superior Court in 2007. What that case held was that even when you have a binding common law arbitration. Which court decided Cohen? It was the Pennsylvania Supreme Court. Okay, so Cohen was decided after Miller. Yes. Let me just step back to where I was. Bucks held, and it was a common law arbitration at issue in the Bucks case, and what the court did in that case was it looked not to the common law arbitration statute, but it employed general contract principles in deciding whether or not the parties chose to engage in a binding contract. And it makes sense because you're only in arbitration in the first instance because it's contractual. So what the Bucks court did was it said, you know what? We're looking at this contract. Arbitration agreements are creatures of contract. We're going to apply traditional contract rules to determine whether or not the parties agreed to enter a binding arbitration agreement. And in the Bucks court, they looked at the actual contract. The contract said that the parties wished to preserve a de novo right to trial, and the court said that common law arbitration rules do not operate to invalidate the party's arbitration agreement. So why do you have arbitration if you can just then pick up and go to trial afterwards? Sure. It's the same that we do compulsory arbitrations in our courts here. It's a means for the parties to get together, have somebody put a number on the case, and hopefully it leads to resolution. But in this situation, and I think the reason a lot of insurance companies have done what they've done in taking these arbitrations out of the binding form is that we've seen words which we do not agree with. And in this particular case, it could have went either way. If Mr. Cersiello was dissatisfied with the award, he could have also requested a trial. Does the Trombetta case undercut your argument? I'm sorry? Trombetta, does that undercut your argument? No, Trombetta does not undercut my argument because in Trombetta, the actual issue there was an appeal of an arbitration award. And if you look at the actual discussion in Bucks, it discusses the Trombetta case. And Bucks specifically states that Trombetta is dealing with an appeal from an arbitration award, not a right to a new trial, a fundamental right that all parties have in litigation. So the court differentiated between what constitutes an appeal, where the court is actually asked to review a decision, versus simply preserving your right to proceed to trial. In this case, Harleysville declined to intervene in the underlying tort litigation. That's correct. Does that suggest that it forfeited any right to a de novo trial that was otherwise preserved under the arbitration? Absolutely not. The only cases that were cited for that proposition were Zerger and a couple of other cases that followed Zerger. And what Zerger specifically states in his decision is that when the underlying case does not proceed to verdict, where there's an actual adjudication of the damages, then the actual arbitration agreement is afforded full force in effect. Could you explain this language in the Pennsylvania Arbitration Act, which says that the award, an arbitration award, may not be vacated unless it is clearly shown that the party was denied a hearing, or for a series of other reasons, misconduct, fraud, et cetera. Right. But the award may not be vacated. Doesn't that suggest that all arbitration has to be binding? Right. What the Bucks case explained and what the New Jersey case law has explained, New Jersey's arbitration statute is virtually identical to the statute at issue in Pennsylvania. And what those courts have said is that common law arbitration procedures, like the one you just identified, that call for binding arbitration, are simply inapplicable when it comes to non-binding arbitration agreements. So if parties choose to have a non-binding arbitration agreement and they preserve their right to a judicial forum, then what you had just identified are inapplicable, because they're only applicable to binding arbitration agreements. But the Act doesn't make any distinction. How did you draw that distinction? We're only in that Act because of virtue of the contract. And that's what the Bucks court explained. Bucks expressly states that provision that you just identified is inapplicable in the context of a non-binding arbitration agreement where the parties have preserved their right to a judicial forum. I understand that's what Bucks says. Sure. But that doesn't seem to be what the statute says. The statute simply is inapplicable under that particular provision. Inapplicable to common law arbitration procedures? Yes. All right. There's a distinction drawn, parties drawn, between a de novo trial and a de novo review. Do you draw that distinction? What is the distinction? I think a de novo review is when you look at the facts of the case that have been tried. And you're looking at the facts, and the court has to determine whether or not the right decision was the right. When you have a de novo trial, you start from a new slate, and the parties preserve their right to have their entire case tried in a judicial forum. And what do you think you're entitled to here, a de novo review or a de novo trial? We're entitled to a de novo trial consistent with the express terms of the arbitration agreement. Now, the other side says that even if you're correct on everything else, that you did not file an action within 30 days of the return. Okay. The argument to that is very simple. How do you get over that, and how do you get over Miller? Sure. It's very simple. The common law arbitration provision at issue 73, 41, and 42 only apply to those situations where you're seeking to vacate an arbitration word on the basis of fraud, irregularities, and the proceedings. As Buck's explained, that's not what we're doing. We cannot file an action under those particular set of circumstances because we're not seeking the relief that's set forth within those sections. We're simply demanding a new trial consistent with the provisions of the policy. This is not an appeal, which is what 73, 41, and 2 address. Isn't Miller virtually identical to your situation? Although they had a 60-day demand period of policy, Miller said an action wasn't filed within 30 days, and notwithstanding what you can agree to contractually, you can't agree to modify a statute. Miller did not address the second issue in that case, which was exactly what we're talking about now, whether the proper action was taken to preserve the appeal. And what the argument is that I'm making is once, by virtue of the contract, once we demanded a new trial, there was nothing to confirm under 73, 41, or 2, because by operation of the contract, the court had nothing to confirm at that point because it was a non-binding arbitration agreement. The law, the applicable law is Pennsylvania law, is that right? Pennsylvania procedure governs the actual conduct of the arbitration. The argument that we made in our brief was that New Jersey's substantive law governs the actual interpretation and enforcement of the contract. I thought you told us before that that law was the same in the two states. Did I hear you wrong? No. What I was trying to explain to you was the law is the same. We did argue there is no conflict in the briefs between the laws, and that's what I was trying to explain. There's no conflict between Pennsylvania and New Jersey law in enforcing these agreements. Okay. Do you have any questions? Do you have any questions? Thank you. You're welcome. The red light is on. Mr. Bigda. May it please the Court, I'm Andrew Bigda. Did he save time? Not him. How much time? Same place. May it please the Court, I'm Andrew Bigda, and I represent Michael and Kimberly Circio, the appellees in this matter. As it did in the lower court, basically what Harleysville is asking this Court to do is to say, we want you to enforce our right to go ahead and violate a statute. That's what it is. And the statute in this case is the Pennsylvania common law arbitration statute. Excuse me. You can come in if you want to come in. There are seats somewhere. The Pennsylvania arbitration statute says that arbitrations are conclusively presumed to be common law arbitrations unless they are in writing and expressly provide for arbitration to some other statute or the UAA. In this case, the arbitration statute said that we were going to arbitration. That's it. There was no provision identifying any other statute, the UAA or anything else. So that means conclusively that Pennsylvania's arbitration statute applies. There's nowhere else to go. You obviously have a disagreement with Mr. Blasek on that point. That's why they're sitting on different sides. So that's the statute that controls. That's the statute that controls. Because the Pennsylvania law says that an arbitration award may not be vacated. It has two qualities. Number one, arbitration. That's the Pennsylvania common law arbitration. Pennsylvania's common law arbitration statute. Sorry to interrupt. Go ahead. Yeah. Pennsylvania's common law arbitration statute has two qualities to it. One is it's binding. There's no de novo review. There's no de novo trial. There's no appeal. There is a possibility of a vacation if there's some impropriety, and they have to file that within 30 days. That's basically what Harleysville. Would you help me out with something? I can't understand the policy implications of the statute. Maybe you can. Why is it that you cannot agree to non-binding arbitration? Well, statute says there is no. Harleysville is suggesting to the court that there's a such thing as called a non-binding common law arbitration. There's no such animal because common law arbitration by its very definition is binding. But why can you not agree separately from what the statute provides to non-binding arbitration? Because the statute says that you can't. It doesn't say you can't contract for non-binding arbitration. Well, it says if you engage in arbitration, any arbitration, theoretically, I suppose there would be an ability for the parties to contract for non-binding if they made it pursuant to some other statute. I understand your point. But all arbitration, common law arbitration, is binding. The award cannot be vacated. Correct. Why did the legislature believe that that was necessary? What are the policy implications? Well, the policy implications are, and this case is a prime example of it, this is an automobile accident that occurred in 2005, and we're more than six years later. And my client, who had an arbitration, who a unanimous panel of three arbitrators said this is the value of your case, still has been unable to collect his under-insurance benefits from his fiduciary, Harley Zill's insurance company. So the policy implications are is that by having binding arbitration, the case gets over with and these things can move on. And, by the way, this is the same kind of public policy that New Jersey has. Opposing counsel was talking about what New Jersey talks about with these superior court cases like Cohen. Well, the reality of it is is that the New Jersey Supreme Court, beginning with Zerger, spends a lot of time talking about how you have to get these UIM cases over with. When somebody has an opportunity to go to trial or have a full-blown arbitration to have their cases heard on the merits, that's it. It's over with. Isn't there something inconsistent about having a statute for common law arbitration? I guess that's a hump I have trouble jumping over. Well, I mean, that's the name that they gave to the statute, Your Honor. I mean. Right. The Constitution says you have a right to trial by jury, but lawyers can sign a contract and agree that they don't want to trial by jury. Right. And had Harley Zill done something in this instance that said, hey, look, you know, we don't like the Pennsylvania arbitration statute. We don't want to have anything to do with it. They could have theoretically drafted some other way in which if they want to have multiple bites at the apple, perhaps they could have. But the reality of it is is they put in their policy that the Pennsylvania rules were going to apply because this took place in Luzerne County, Pennsylvania, and they knew it. But you also knew what you were signing when you accepted that insurance policy. Well, certainly. And therein lies the ambiguity in this case. You know, opposing counsel talks about how Bucks says all the Bucks orthopedic case says all that stuff. What Bucks really stands for in this case is ambiguity. If you look at this case and you say, well, there's this Pennsylvania procedure applies, and that means common law arbitration, and then there's this what they say is unambiguous language that says that they have a trial after the fact, well, it's saying two things. It's saying arbitration is binding because Pennsylvania rules apply, and it's also saying, hey, we get a trial if we don't like the arbitration results. Well, that's ambiguity, and that would be construed against the drafter, the insurance company. This is really, in many respects, Bucks supports our position because Harleysville is the ones who drafted this agreement that has the ambiguity just as it was in Bucks orthopedic. Which state has a higher interest? Well, you say, both of you seem to say, do you think there's any difference between Pennsylvania law and New Jersey law? Let me ask you that. Well, in terms of the interest, there is because, I mean, Pennsylvania is more interested in this because it has a statute on this very thing. I mean, as you can say from the- 7341. Right. I thought you were just looking to ask you if there is a difference before you get into the interest. Is there a difference between both states? I think public policy-wise, there is not a difference. I think New Jersey dislikes never-ending UIM litigation, same as Pennsylvania. But Pennsylvania has taken the extra step by passing a statute that prevents this from happening. All right. Now, the point that they try to make in this case is that, hey, we have this clear, unambiguous language that says, hey, we get a trial after the arbitration. Well, that, first of all, it's not clear and unambiguous because, again, it quotes Pennsylvania. Well, wait a minute. What's so ambiguous about it? Within 30 days, if you don't like the arbitration award, you can go to court and get a trial. Well, it's not relief for them because even if you conclude that it is clear, the reality of it is is they can't craft an insurance policy that violates the statute. Insurance companies in Culbertson and in the Jenrett case- But the language is clear. You're just saying it doesn't comport with the statute. Correct. I'm not saying the language is clear, however. I'm saying it violates the statute, the same as the Jenrett case and the Culbertson case, where the insurance company drafted and tried to change the rules of what it insured was and tried to change the insurance definition of gap coverage or excess coverage to gap. So even if it is clear, it still violates the statute. And it's not clear. It's still ambiguous because- It strikes me as a provision that helps both sides, doesn't it? I mean, supposing you got zero award from the arbitrator, I bet you'd be the first one to want to go to court. I don't necessarily think it helps both sides because if you think of it, the reality of it is is my client, this construction worker, had to go to trial in federal court, had to go have an arbitration, had to spend all kinds of money in an effort to get here. I mean, in weighing the differences between the ability of each side to get to court, it's not even close. And again, it's not unambiguous because, again, Harleysville is the one who puts in the provision that says the local rules will apply. Well, that's Pennsylvania. What does that mean? What do you think that means? The local rules apply. Well, certainly Miller v. Allstate said that that means that it's an explicit choice of law provision and that means that Pennsylvania rules apply. And Pennsylvania rules are the Pennsylvania common law statute. And the Pennsylvania common law statute says no appeals were. What is it? You said that they had to do something more than make the demand within 30 days. You agree they made the demand within 30 days, do you not? I agree. They sent a letter. They sent a letter, which let's assume that that was sufficient to constitute the demand. What more should they have done? They had a declaratory judgment pending in the district court. What would have they done? They were the insurance company. Under this form of non-binding arbitration that the parties agreed to and that the policy covered, they were entitled to a trial. They know that that's their position. They weren't the ones who would institute the litigation. What more could they have done other than send you the demand? Well, they could have complied with statute. Okay. Which would have required what? Which would have what? They would have had to file a petition with a court of common pleas. That's what the statute requires. But 7341 would have limited their remedies. Correct. Okay. But that's not they're saying that they had the right to a de novo trial under their form of non-binding arbitration that was in the policy. That's different than what 7341 covered. Well, they don't have a right. The statute either applies or it doesn't. Let's assume the statute doesn't apply for purposes of your argument. Do you lose the case? If the statute doesn't apply, then no, I don't necessarily think I'd lose the case because there's still the ambiguity in there that would be construed against the drafter. Which gets you where? Which gets us back to bucks, which means it would be in our favor, which means it would be construed against them. If, in fact, the statute doesn't apply, go back to my question here, what more did they need to do other than make the demand? If the statute doesn't apply, presumably they did all the things they needed to do. All right. Okay. You have other arguments, but at least at that point you would agree they did what they had to do. If the statute didn't apply. Okay. Correct. It could have been a different policy. Could they have written a policy? Given the Pennsylvania statute, could they have written a different kind of policy that would have let them have a de novo trial? I think it's possible. The problem is, is that under the statute, it has to be expressly in writing pursuant to the UAA or a similar statute. So what would end up happening is if they made it to some other statute, then we would get into these arguments about, geez, is that a similar statute to the Pennsylvania statute? You can come in, by the way. There are seats. They're in the front. It's like it's in law school. Nobody wants to sit in the front. I used to teach law school, I know. Go ahead. I'm sorry. Your argument is that BUCS, in fact, supports your position. Is that right? In many respects it does. I think what happens in BUCS is that the court basically throws up its hands and says, you know what, we don't really know what happened here. We're going to construe it against the drafter. It may have said that, but it did uphold a non-binding 30-day provision, very similar to the one in this case. Well, in a sense it did, but it construed it against the drafter. One of the curious things about it. It might have done that, but it still upheld a provision almost identical to the one in this case. Well, it may have done that, Judge, but the thing about BUCS that doesn't make sense, and I can pull the language right out of the case, it says, for example, it says, initially we note that procedural rule 7342 is exclusively applicable to binding common law arbitration. And that sentence doesn't make sense because there's no other animal other than common law arbitration. Binding common law arbitration is like saying binding binding arbitration. There's no such thing as non-binding common law arbitration. And that's what BUCS seems to suggest. And the other thing about BUCS that's interesting is that BUCS still required the appellee in that case to comply with the statute. They said, look, you still have to file within 30 days into the court of common pleas to gain a de novo trial. So BUCS was sort of saying two different things. No, no, that's fine. That's what I was asking you about a moment ago. So either the statute applies or it doesn't apply, and BUCS seems to be saying two different things at the same time. It only applies if you file with the court within 30 days. BUCS seemed to require that if they wanted to appeal from the arbitration decision, they had to file with the court of common pleas. Within 30 days. Within 30 days, which they did, which Harleysville in this case did not. Okay. You're quibbling about the Harleysville complying with the notice provision. Complying with the statute. I shouldn't say quibbling. You just disagree that they filed within 30 days. All right. And ultimately they have no grounds to file it because they've admitted in all the court proceedings and the pleadings that we have here that they have no grounds to do that. It was a unanimous decision. I see that my time is up. In the end, I ask that you. We'll have time if we have questions. Do you have any questions? I have no questions. Do you have any questions? Okay. Thank you. Thank you. Thank you. I'd like to address one of the issues that Judge Slobiter had asked, whether there is any difference between New Jersey and Pennsylvania law. And it's our position that there is not. New Jersey, just like Pennsylvania, has an arbitration statute that limits the reasons why parties can appeal. And just like New Jersey, Pennsylvania has adopted the same rationale in not applying and using arbitration procedures to defeat the express intent of parties to preserve their fundamental right to a judicial forum. And so our position was, and I think I've laid it out in the brief, is that there is no conflict between New Jersey and Pennsylvania law with regard to the enforcement and honoring the ability of parties to enter non-bonding arbitration agreements. I thought the district court said that Pennsylvania had a higher interest in enforcing its common law arbitration statute. Isn't that what Judge Kosick said? That is what he said. And from our perspective, you have two New Jersey parties. You have a New Jersey insurance company. You have a New Jersey corporation that got the insurance policy. So you have two New Jersey companies with the policy issued in New Jersey. Every car under the policy was garaged in New Jersey. The policy throughout it references New Jersey law. In fact, the ---- But Mr. Cerciel is a Pennsylvania resident. Sure he is. And the accident happened in Pennsylvania. Right. And the policy seems to say that that's the law that you would apply. You would apply local rules of arbitration procedure and evidence. That's what the policy says. It does not say that Pennsylvania contract law will apply to the interpretation and construction of the contract. And that's where the difference was. And if you look at the Miller case, Miller actually notes that local rules of arbitration procedure applied. However, in that case, New Jersey law applied to the actual substantive contractual issues. And the difference is that New Jersey says you don't have to follow the arbitration. It doesn't matter what happened in the arbitration. You can go through the arbitration and the arbitrators decide. But you can just toss that out. Both New Jersey and Pennsylvania right now, if you look at the status of the law, say that. I don't think Pennsylvania says that. Pennsylvania statute said that you have to follow the arbitration unless it's fraud or something. That's the exact same thing that the New Jersey statute says. I'm sorry. I didn't think that was the answer you gave me. Both states have adopted the same rationale for saying that non-binding arbitration agreements are enforceable. It's wonderful. I mean, somebody listening to this would say we're in some kind of a different world. Non-binding arbitration agreements are enforceable. Is there something wrong with that? Of course not. That's our position. We're only in arbitration because of the arbitration agreement in the first place. But I'm sorry. But arbitration, the whole point of arbitration is that you don't have a trial. You arbitrate. And that gets you out of trials. Right. And what it does is it gets you closer to resolution, hopefully. Then you have somebody that puts a number on a case, just like compulsory arbitration does in both the federal and state courts. But both parties in those situations have a right to ultimately a trial. All right. Let's go back to the, I guess, the question that still seems to be lingering. Sure. You know, you asked for this demand and you didn't do anything else. How is this trial going to get started? Where is it going to get started? What's it going to look like? Right. First, we sent the demand. And we already had an action pending, like you had pointed out. Where? In the Federal District Court of Pennsylvania, where the underlying case was tried. You have a declaratory judgment action. Right. And the underlying tort case was tried in front of, it was then Judge Vanaski. And this case was actually pending before Judge Vanaski, so he's familiar with all the issues. What the New Jersey courts have said in interpreting the contract part of this is that it makes no sense to require an insurance company to file an action against itself. I understand that. And so what are we supposed to do under that circumstance? And what New Jersey law has said, under this type of contract provision, this is where the difference is between actual contract law and arbitration procedures. And I think you got my argument on the head. And I agree with you, you know, on those particular points in terms of how you were asking them. But under New Jersey law, once you send that letter, that satisfies the actual arbitration language. What happens? You have the situation you have now. A couple of years later, you still don't have a form to have this filed. Mr. Sorciello simply files a lawsuit against Harleysville for UIM benefits, just like it's done in all the other cases now where you have non-binding arbitration agreements. Harleysville will be on the caption as the defendant, and the plaintiff will be Mr. Sorciello. Thank you. Thank you. We'll take this matter under advisement.